and then to port, sometimes at an angle of thirty degrees to forty-five degrees. That she "steered widely," and was "sheering to starboard and port all the way down." He considered it "rough steering," and that he noticed it "shortly after he started." He was at first inclined to attribute this to the schooner's taking bottom, when on sounding the next day he found sixteen feet of water, he "concluded" that the schooner's helm must have been to starboard instead of port. We have seen that this conclusion is disproved by the evidence of the schooner's officers.

The foregoing summary of the facts of the case indicates unmistakably the solution of the question to be decided. The tug with a tow line fifty to sixty fathoms in length pursues a course not more, and probably considerably less, than half a hawser's length from the line of the wharf. This she does without the slightest necessity and with ample sea room to the northward to permit her to insure beyond peradventure the safety of the vessel in her charge. She persists in this course notwithstanding that she is apprised, that the tow is steering widely and sheering from side to side. She even omits to order the tow to port her helm until so late, that as Captain Siner says, obedience to the order "would have made no difference" in the results. The experts who have been examined differ somewhat as to proper length of hawser to be used in such a service as the one in question. But they very generally concur in the obvious and rational conclusion that if, under similar circumstances, they should find that the tow was steering badly they would haul off from the wharf to at least the length of the tow line, so as to render a collision with it impossible. In not having done so I consider the tug was clearly in fault.

## Case No. 4,701.
### FAW v. DAVY.
[1 Cranch, C. C. 440.][1]
Circuit Court, District of Columbia. July Term, 1807.[2]

THE COURT heretofore [in April term, 1802 (Case No. 3,663)] had admitted parol

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reversed in 7 Cranch (11 U. S.) 171.]

evidence in this case to explain the expression "certain controversies and accounts," in the written submission, and now being satisfied, by the evidence, that certain flour accounts were intended to have been submitted, and that the arbitrators had not considered those accounts, but made an award upon only part of the subjects submitted, set aside the award and ordered an account to be taken by a master; the cause having been set for hearing by consent.

## Case No. 4,702.
### FAW v. MARSTELLER.
[See Case No. 9,137.]

## Case No. 4,703.
### FAWCETT v. The NATCHEZ.
[3 Woods, 16.][1]
Circuit Court, D. Louisiana. Nov. Term, 1876.

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]